UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDY MARIE CAMPOS,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, acting<br>Commissioner of Social Security,<br><br>    Defendant. | No. 1:21-cv-00827-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 19, 21, 22)** |

**I.   Introduction**

Plaintiff Sandy Marie Campos ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 19, 21–22. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision.  Plaintiff's appeal is therefore granted.

**II.   Factual and Procedural Background[2]**

On September 28, 2018 Plaintiff applied for disability insurance benefits and supplemental security income alleging a disability onset date of May 15, 2017.  The applications were denied initially on March 7, 2019 and on reconsideration on July 24, 2019.  A hearing was held before an Administrative Law Judge (the "ALJ") on August 24, 2020.  AR 55–77.  On September 2, 2020 the ALJ issued an unfavorable decision.  AR 16–27.  The Appeals Council denied review on March 18, 2021.  AR 1–7.  On May 21, 2021 Plaintiff filed a complaint in this Court.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 9 and 12.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

### III.     **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.     The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset of May 15, 2017.  AR 19.  At step two the ALJ found that Plaintiff had these severe impairments: spinal disorder, anxiety, and depression.  AR 19.  At step three the ALJ found that Plaintiff had no impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 19–20.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with a variety of physical restrictions not at issue and the following mental restrictions: simple, routine tasks; occasional public contact; occasional teamwork; no jobs requiring hypervigilance or looking after the safety of others; static work environment with no day to day variation in task performance or physical surroundings; work mainly with objects not people; intermittent superficial contact with the public; no intense interaction with people; and, a reasoning level no higher than two.  AR 20–25.

At step four the ALJ found that Plaintiff could not perform past work as a home health aid or school bus monitor.  AR 25.  At step five the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy: marker, garment sorter and bagger.  AR 26.  Accordingly, the ALJ found that Plaintiff was not disabled at any time since her alleged

disability onset date of May 15, 2017.  AR 26-27.

## V. Issues Presented

Plaintiff asserts one claim of error: that the ALJ improperly rejected the opinion of Dr. Nguyen, Plaintiff's treating mental healthcare provider.

### A. Dr. Nguyen's Opinion

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough

summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).  The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence.  *See* 20 C.F.R. §§ 404.1545(a)(3).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered.  *Id.*

On April 22, 2022, the Ninth Circuit addressed whether the specific and legitimate reasoning standard is consistent with the revised regulations, and clarified what explanatory obligations still remain:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. See 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, see Murray, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.
> . . .
> Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, id. § 404.1520c(b)(2).

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### 2. **Analysis**

Plaintiff's treating clinical psychologist, Lananh Nguyen, Ph.D., completed a "Mental Residual Functional Capacity Medical Source Statement" (MRFC questionnaire) on August 29, 2019. AR 406–409. Dr. Nyguen diagnosed generalized anxiety disorder. AR 406. Dr. Nguyen opined that Plaintiff had work-preclusive limitations[3] in the following areas: completing a normal workday or workweek without interruptions from psychological based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; get along with coworkers and peers without distracting them or exhibiting behavioral extremes; and, traveling in unfamiliar places or using public transportation. AR 407–08. Dr. Nguyen further opined that Plaintiff's mental health impairments would cause varying degrees of off task behavior, absenteeism, and reduced productivity. AR 408.

Ultimately Dr. Nguyen opined within a reasonable degree of medical certainty that Plaintiff's mental health impairment would preclude her from obtaining and retaining competitive full time employment for a continuous period of more than six months. AR 409. Dr. Nguyen based the opinion on four therapy visits between August 10, 2017 and August 29, 2019. AR 406, 409.

The ALJ rejected the opinion, explaining as follows:

> I do not find this opinion persuasive because it is inconsistent with and unsupported by the medical and other evidence. For example, it is inconsistent with subsequent mental status examination findings, which showed the claimant was cooperative and oriented times four with a normal short and long-term memory, fluent speech, coherent thought process, and average intellectual functioning (Exhibit 6F, pp. 4-6). The opinion is also inconsistent with and overrestrictive, especially in light of a July 2017 report from a primary care provider, showing a examination of the psychiatric system was generally unremarkable and showed she was cooperative with a normal mood and affect (Exhibit 1F, p. 22). The opinion is also unsupported by Dr.

---

[3] The MRFC check box questionnaire asks the source to evaluate a claimant's abilities in 20 areas of mental functioning by checking a box corresponding to the level of limitation ranging from Category I (does not preclude performance of any aspect of the job) to Category IV (precludes performance 15% or more of a workday). Dr. Nguyen checked the box corresponding to Category IV for 3 different abilities, and Category I for the remaining 17.

Nguyen's own report, which showed months between treatment contact (see Exhibit 5F, p. 1), and there are not a lot of treatment notes in the record.

The state agency disability determination service (DDS) physicians who reviewed Plaintiff's file at the initial and reconsideration levels provided no opinions as to her functional capacity, but rather concluded the record was insufficient to make a determination. AR 81, 99–101. The ALJ disagreed citing the same examination findings quoted above, findings which the ALJ also relied upon in concluding at step three that Plaintiff had only mild to moderate limitations in any area of mental functioning. The ALJ concluded that only some mental limitations were warranted in consideration of Plaintiff's "diagnosis of and treatment for a generalized anxiety disorder (see Exhibits 2F, pp. 3, 7; 3F, pp. 1, 5; 7F, p. 1), depression (see Exhibit 7F, pp. 13, 21) and posttraumatic stress disorder (PTSD) (see Exhibit 6F, p. 7)." AR 24.

Initially, Plaintiff questions the ALJ's reliance on a July 12, 2017 visit noting normal mood and affect. AR 323. Plaintiff observes that the visit was for chest tightness and breathing difficulties, physical symptoms which she contends manifest internal angst. She contends that a complete mental status examination was not performed, that the findings related to mood and affect were cursory and isolated, and that they were not representative of her mental health throughout the relevant period where later evidence demonstrates a "downhill slide." Br. at 6-10, Doc. 19.

Notably, the ALJ described the July 12, 2017 visit as a primary care visit, despite the conspicuous notation at the bottom of each page appearing in all caps, "EMERGENCY DEPARTMENT NOTE." The visit notes themselves are not entirely clear on the reason for the visit  The chief complaint is listed as "tightness in chest with diff. breathing," but the "initial comments" section for that visit notes only chest tightness "and a headache" with no mention of breathing difficulties. AR 322. The review of systems confusingly states that she denied shortness of breath, which directly contradicts the chief complaint. AR 323. The examination of her lungs showed normal breathing. *Id.* The discharge diagnosis was acute anxiety syndrome for which

Xanax was prescribed.  AR 327.

Importantly, the July 12, 2017 visit was not a persuasive example for the ALJ to cite as demonstrative of Plaintiff's generally unremarkable psychiatric presentation.  The visit likewise was not a persuasive basis to reject Dr. Nguyen's opinion concerning Plaintiff's mental limitations.  This visit was an isolated instance at the very beginning of the 3-year relevant period and does not reflect a complete mental status examination.

Defendant counters that, given the limited number of psychiatric examinations in the record, the ALJ appropriately emphasized the findings in this visit even though the findings were limited to cooperative behavior with normal mood and affect.  But it is precisely because there were so few examinations in the record that the ALJ's accurate and complete characterization of the same was important.  The ALJ's incorrect description of the visit as a primary care visit, and omission of any discussion of the discharge diagnosis, suggests the context of the visit was largely misunderstood by the ALJ.  It was an emergency department visit for chest tightness (at a minimum) and, notwithstanding the seemingly benign psychiatric findings of cooperative behavior with normal mood and affect, the discharge diagnosis was acute anxiety syndrome for which a benzodiazepine was prescribed.  On balance, the visit neither strongly supports nor undermines the existence of work preclusive mental limitations.

Plaintiff equally disputes the ALJ's reliance on the records from the Porterville Adult Clinic and assessment by LMFT Pendley, which Plaintiff contends the ALJ did not fairly summarize.  Br. at 8.  The assessment in question was dated February 19, 2020.  The ALJ found that this assessment undermined Dr. Nguyen's opinion because "the claimant was cooperative and oriented times four with a normal short and long-term memory, fluent speech, coherent thought process, and average intellectual functioning."  AR 23 (citing AR 413–15).

Plaintiff contends that "the mental status examination described far more aspects of

Campos's presentation." Br. at 7-8. Plaintiff describes her traumatic history and her symptoms as she reported them to LMFT Pendley, such as abusive relationships, loss of a loved one, loss of interest in activities, hypervigilance, intrusive thoughts, and distressing dreams. *Id.*

Although these subjective statements are certainly relevant considerations, they are not aspects of a mental status examination as Plaintiff contends. Admittedly, the line between objective and subjective considerations is often blurry in the mental health treatment context (and further blurred by the lack of clear section headings in LMFT Pendley's notes). However, a mental status examination (MSE) is at least one component of the mental health visit which is largely objective. An MSE consists mostly of observations of the individual's presentation from the provider's point of view (such as speed and accuracy of immediate and remote recall, coherence of thought content, pattern of speech, impression of intellectual functioning, etc). The MSE results do not include the recitation of the individual's self-reported symptoms and experiences (such as family tragedy, distressing dreams, intrusive thoughts). Moreover, the latter are not readily translatable into concrete work restrictions. As such, ALJ's tend to rely on the MSE findings, as the ALJ did here.

However, the MSE findings here from LMFT Pendley were not unremarkable. They did include objective abnormalities such as slow motor activity with a flattened affect. AR 413. The ALJ did acknowledge those two abnormalities at the beginning of her summary of the mental health evidence, but then omitted them later in the decision when providing reasons for rejecting Dr. Nguyen's opinion. At that point the ALJ focused only on the normal findings and not on the abnormalities. This is not harmful error in and of itself given the ALJ's entire decision is subject to consideration, and the ALJ need not necessarily reiterate all pertinent facts at each applicable juncture of the opinion.

Importantly though, there was an additional objective abnormality the ALJ either overlooked or mischaracterized. Here, the ALJ's characterization of "normal short and long term

memory" is only half correct.  LMFT Pendley found that short term memory was normal but long term memory showed "delayed recall." AR 413.  In sum, Plaintiff's contention is valid in that the ALJ mischaracterized the results of LMFT Pendley's assessment, though not necessarily for the reasons Plaintiff articulates.

The ALJ also found that Dr. Nguyen's opinion "was *unsupported* by Dr. Nguyen's own report, which showed months between treatment contact . . .." AR 23 (citing AR 409) (emphasis added).  Granted, Dr. Nguyen did base the opinion on only four visits with Plaintiff over a two year period.  Frequency of examinations is a relevant factor to be considered when evaluating the opinion evidence.  20 C.F.R. § 404.1520c(c)(3)(ii).  But supportability is a distinct factor and, together with consistency, is the chief factor to consider under the regulations when evaluating opinion evidence.  *See* 20 C.F.R. § 404.1520c(a) (noting that supportability and consistency are "the most important factors" when evaluating opinion evidence and the agency *"will* articulate" how they are considered.) (emphasis added).  An ALJ's analysis of the opinion evidence falls short unless it is well rooted in the factors of supportability and consistency.  In other words, an ALJ cannot repackage "frequency of examinations" as a discussion of supportability when frequency of examinations is a distinct subordinate consideration under the regulations.

In addition, the ALJ rejected Dr. Nguyen's opinion because there were "not a lot of treatment notes in the record," *Id.*  Defendant interprets the ALJ's finding as suggesting an "overall lack of psychiatric treatment." Resp. at 7.  These two statements are not interchangeable and, in any case, neither statement is factually accurate. The accurate statement is that there were not many mental status examinations in the record.

Notwithstanding the lack of mental status examinations in the record, there was ample evidence of psychiatric treatment and associated treatment notes.  The relevant records are from Sequoia Family Medical Center dated between January 2017 and May of 2020,  AR 329-403; 417-

437.  Although the treatment notes are mostly handwritten and a significant portion thereof are borderline illegible, they do appear to reflect fairly routine visits during that time period for generalized anxiety disorder, PTSD and depression.  Below is a brief overview of those visits with a description of the pertinent portions of the treatment notes as best the Court can make out the handwriting:

- 6/20/17 visit discussing anxiety and prescribing Buspar (AR 354)
- 8/1/17 visit diagnosing anxiety, discontinuing Xanax, prescribing Klonopin (AR 352)
- 8/10/2017 visit discussing anxiety; partial mental status examination; negative for suicidal ideation, negative for auditory or visual hallucinations; negative for delusions; negative for delusions; positive for [illegible]; medication side effects; and managing dosage of Buspar, Klonopin  (AR 351)
- 9/20/17 follow up for anxiety; alert and oriented times 3 (AR 349)
- 11/3/17: follow up; alert and oriented times 3; symptoms of fatigue, low appetite (AR 347)
- 12/4/17: medication management, Klonopin, weight loss (AR 345)
- 2/15/18: depression (AR 340)
- 3/16/18: follow up for depression and anxiety (AR 339)
- 4/25/28: same (AR 337)
- 6/2/18: anxiety and Klonopin management (AR 335)
- 8/30/18: same (AR 333)
- 10/26/18: same (AR 331)
- 11/18/18: same; agoraphobia, past trauma; PTSD (AR 330)
- 8/16/19 to 5/28/20: GAD management (AR 417 to 437)

There were no complete mental status examinations and the partial examinations are not entirely legible.  As such, it is not specifically clear upon what objective basis, if any, the diagnoses were made and the basis upon which prescriptions were issued.  Nevertheless, contrary to Defendant's contention, there is indeed an extensive treatment history for Plaintiff's psychiatric impairments.  However, that history in this case does not readily facilitate the ALJ's assigned task of weighing that evidence and translating the same into a concrete RFC.  In such situations the agency often develops the record with a consultative examination, which was not done here.

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation.  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir.

2001); *Tonapetyan*, 242 F.3d at 1150. A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

The state agency physicians who reviewed Plaintiff's file at the initial and reconsideration levels concluded the record was inadequate to render a determination. AR 81, 99. They also suggested that the inadequacy of the record was a problem of Plaintiff's own making as she was non-responsive to requests to complete forms, and non-responsive to calls made "to schedule the exams," ostensibly referencing a consultative exam. The ALJ did not adopt those findings, however, or otherwise suggest that Plaintiff was to blame for the alleged ambiguity or inadequacy of the record.

Rather, the ALJ disagreed that the record was inadequate finding that "evidence received at the hearing level" was sufficient to render a mental RFC, "especially in light of a primary care provider, showing she was cooperative with a normal mood and affect (Exhibit 1F, p. 22)," and in light of the records from Sequoia Family Health Care documenting diagnosis and treatment for anxiety, PTSD, and depression. AR 24.

While an ALJ is not required to be held to the state agency doctors' conclusions as to the adequacy of the record, here the ALJ's articulated basis for disagreeing with their conclusions is not supported. As to the primary care visit noting normal mood and affect: 1) as noted above, that was an emergency department visit, not primary care; 2) the state agency doctors did review that exhibit (thus it was not new evidence received at the hearing level as the ALJ suggested); and, 3) notwithstanding the findings of cooperative behavior with normal mood and affect, the state agency doctors noted that the diagnosis was acute anxiety syndrome (they did <u>not</u> discuss the findings of

normal mood and affect).  AR 81, 98.  Thus, they did not draw the inference the ALJ drew about the visit being exemplary of "generally unremarkable" psychiatric presentation.

As to the Sequoia Family Health records, the state agency doctors did review those records.  They were not novel evidence received at the hearing level as the ALJ suggested.  The novel evidence at the hearing level were the records from the Porterville Adult Clinic and the February 2020 mental status examination by LMFT Pendley.[4]  However, that MSE was not entirely benign.  It included two abnormalities the ALJ observed (slow motor activity, flattened affect) and two the ALJ did not observe (delayed long-term recall and underweight appearance).  AR 413.

Thus the mixed findings contained in the February 2020 exam would not necessarily support the existence of work preclusive limitations as opined by Dr. Nguyen.  Nevertheless, mixed findings on one exam is insufficient to serve as a standalone basis for the ALJ to override the judgment of not only Dr. Nguyen, but also the state agency doctors who found the record inadequate to render a mental RFC determination.

In discussing the state agency doctors' finding regarding inadequacy, Defendant again suggests that it could be explained by Plaintiff's "lack of psychiatric treatment."  Defendant makes that point on three occasions, and not only presents that characterization as her own interpretation of the evidence, but also imputes that characterization to the ALJ and the agency doctors.  *See* Resp. at 6, 7, 8.  Again, the ALJ did not make that observation, the agency doctors did not make that

---

[4] It is worth briefly noting that, contrary to Plaintiff's suggestion, the ALJ is not per se unqualified to interpret novel evidence received at the hearing level.  Plaintiff cites the oft-quoted prohibition of an ALJ interpretating "raw medical data" and translating the same into functional terms.  That principle is most often applied to complex laboratory, imaging, or other diagnostic findings, not to mental status examination results which are largely stated in laymen's terms.  *See, e.g.*, Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (finding the ALJ was unqualified to independently interpret MRI results).  Moreover, there is always a gap in time between the agency level review and the hearing decision, and claimants often continue pursuing care in the interim and generating additional records.  Thus, an ALJ is almost always tasked with performing some independent review of medical evidence that was never considered by one of the agency's reviewing physicians and translating the same into an RFC.  This is consistent with the ALJ's role as characterized by the Ninth Circuit.  *See  Rounds v. Comm'r of Soc. Sec*., 807 F.3d 996, 1006 (9th Cir. 2015),  ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").  The agency *may* (not must) order a consultative examination to resolve ambiguity or insufficiency. 20 C.F.R. § 404.1519.

observation, and that is not an accurate observation. The accurate observation is that there was a lack of mental status examinations.

To briefly summarize again, the record contains: 1) a treatment history from Sequoia Family Health Care dated throughout the relevant period documenting psychiatric diagnoses, routine visits, and psychotropic medication management including benzodiazepines (albeit unaccompanied by any mental status examination or opinion); 2) a mental status examination from LMFT Pendley at Porterville Adult Clinic documenting a mix of normal and abnormal findings (albeit unaccompanied by a treatment history or opinion); and, 3) an opinion from Plaintiff's clinical psychologist Dr. Nguyen based on four visits (albeit unaccompanied by a mental status examination or treatment history).

This is not a case where the Plaintiff lacked significant treatment history, abnormal mental status examination findings, or the opinion of a treating provider. Although each one came from a different source, all three were present and supportive (in varying degrees) of mental limitations. Granted, as Defendant contends: 1) the ALJ did account for mental limitations to some extent in the RFC; 2) the ALJ is not per se unqualified to do so independently; and, 3) the RFC need not mirror any particular opinion because it is an administrative finding reserved for the commissioner.

But it is a rare case where an RFC is formulated without the support of an opinion from a reviewing or examining source such as a state agency physician or consultative examiner. As such, Dr. Nguyen's treating source opinion was the only statement from a medical professional as to the nature and extent of Plaintiff's mental limitations. The ALJ's rejection thereof was harmful error.

Remand is therefore appropriate for the ALJ to order a review and/or examination by a medical professional to opine on the nature and extent of Plaintiff's mental limitations. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the

agency for additional investigation or explanation.").

**VI.     Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted. The Clerk of Court is directed to enter judgment in favor of Plaintiff Sandy Marie Campos and against Defendant Kilolo Kijakazi, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:     **January 20, 2023**                        **/s/ Gary S. Austin**
                                                       UNITED STATES MAGISTRATE JUDGE